UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

CAPITOL INVESTMENTS USA, INC. and          Case No. 09-36408-BKC-LMI
NEVIN KAREY SHAPIRO,                         (Substantively Consolidated)
                                             Case No. 09-36418-BKC-LMI
            Debtors.                         (Jointly Administered)
_____/
JOEL L. TABAS, TRUSTEE,                      Chapter 7

            Plaintiff,
                                             Adv. Case No. 11-02587-LMI
v.

ERIC D. SHEPPARD, an individual, *et al.*,
            Defendants.
_____/

**THE SHEPPARD PARTIES' (1) MOTION TO
DISMISS THE COMPLAINT AND (2) MOTION TO STRIKE**

Eric D. Sheppard; Jennifer L. Sheppard (Eric Sheppard and Jennifer Sheppard are

collectively referred to as the "***Sheppards***"); WSG Development Co. ("***WSG Devco***"); WSG

Charlottesville, LLC ("***WSC***") ; WSG Dulles, LP ("***WSD***"); WSG Short Pump, LLC ("***WSSP***");

WSG Monroe, LLC ("***WSM***"); ATL2130, LP ("***ATL***"); WSG Trace Fork, LP ("***WSTF***"); WSG

Mason Road, LLP ("***WSMR***"); JLS Jensen Beach III, LLC ("***JLS***"); WSG Roanoke GP, Inc.

("***WSR***"); Indrio Village, LLC ("***Indrio***"); Carillon Miami Beach Holding, LLC ("***Carillon***");

WSG Pembroke, LP ("***WSP***"); WSG Chattanooga, LP ("***WSCH***"); WSG Gold Mile, LLC

("***WSGM***") and WSG Riverview, LLC ("***WSGR***"; and together with WSC, WSD, WSSP, WSM,

ATL, WSTF, WSMR, JLS, WSR, Indrio, Carillon, WSP, WSCH and WSGM, the "***Related***

***Sheppard Entities***") (the Sheppards, WSG Devco and the Related Entities are collectively

referred to as the "***Sheppard Parties***"), by and through undersigned counsel, respectfully seek the entry of an Order: (1) dismissing multiple counts of the Complaint filed by Plaintiff, Joel L. Tabas, as Trustee ("***Trustee***") of the jointly administered bankruptcy cases of Capitol Investments USA, Inc. ("***Capitol***") and Nevin Karey Shapiro ("***Shapiro***"; and together with Capitol, the "***Debtors***") for failure to state a claim upon which relief can be granted; and (2) striking immaterial, impertinent, and scandalous matter contained in the Complaint.  In support of this requested relief, the Sheppard Parties state as follows:

## I.    INTRODUCTION

*"The most profound statements are often said in silence"*[1]

In 120 pages of allegations and 59 counts, the Complaint is entirely silent as to any allegation, claim or otherwise that the Sheppard Parties were profiteers of Shapiro's criminal enterprise.  On the face of the Complaint itself, the Trustee alleges that the Sheppard Parties *lost over $1.2 million.  See* <u>Exhibit 1</u>.  That happenstance should end this matter.  *See Perkins v. Haines*, 661 F.3d 623 (11th Cir. 2011) (rejecting trustee's attempt to sue net losers of a *ponzi* scheme).

Because the Trustee cannot sue the Sheppard Parties for receiving any false profits, he has instead concocted sham claims against them in the hopes of hijacking them into paying a multi-million dollar settlement.  In doing so, the Trustee has made recklessly false and immaterial allegations.  Victimized by Shapiro, the Sheppard Parties are now being victimized again – both personally and as a business matter – by the Trustee, even though there is no factual or legal basis for these claims.

---

[1] Lynn Johnston, *For Better or for Worse*, January 15, 2004.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

As set forth below, many of the Counts in the Complaint must be dismissed.  In short, the Trustee's bogus, legally deficient claims not only ignore the admitted facts of this case, but importantly, ask this Court to ignore applicable law and common sense.

## II.    BACKGROUND

As detailed in the Complaint and Shapiro's indictment and subsequent plea agreement,[2] the Debtors' underlying bankruptcy cases arise from a *ponzi* scheme perpetrated by Capitol's founder, owner and Chief Executive Officer, Shapiro.

Capitol held itself out to be in the wholesale grocery distribution business.  Complaint, ¶ 35.  In actuality, though, Capitol conducted virtually no legitimate business and had no other source of funds aside from funds collected from investors.  *Id.* at ¶ 39.  The *ponzi* scheme is alleged to have raised over $800 million to fund its purported criminal activities.  *Id.* at ¶ 35-41.

On July 14, 2010, a federal grand jury in and for the District of New Jersey returned a six-count Indictment against Shapiro, charging him with various criminal offenses, including conspiracy to commit securities and wire fraud, securities fraud, wire fraud, and transacting in criminal proceeds.  Shapiro thereafter pled guilty on September 15, 2010 to counts 2 (Securities Fraud) and 5 (Transacting in Criminal Proceeds) of the Indictment.

Per his plea agreement, Shapiro admitted to the allegations contained in paragraphs 1 and 4 through 18 of the Indictment.  Those allegations alleged, among other things, that:

1.      Shapiro controlled all aspects of Capitol's business;

---

[2] Copies of the indictment and plea agreement are attached as Exhibit 2.  As set forth in *Section III* below, the Court may take judicial notice of Shapiro's indictment and subsequent plea agreement, along with the Trustee's various filings in these cases, in ruling on the issues raised herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

2.      From around January 2005 to November 2009, Shapiro and others induced investors to provide the Debtors with hundreds of millions of dollars, promising that the money would be used to fund Capitol's grocery business;

3.      The reality, however, was that during this time period Capitol had virtually no active wholesale grocery business and instead, was operating as a *ponzi* scheme;

4.      That in perpetrating this *ponzi* scheme, Shapiro and others (i) made false statements regarding the use of investors' monies; (ii) made false statements and provided false documents regarding the financial performance of Capitol; (iii) provided false documents regarding business transactions being conducted by Capitol; and (iv) prepared and provided promissory notes and other investor documents to Capitol investors to evidence Capitol's indebtedness with such documents falsely promising specific returns to the investors.

*See* Indictment, ¶¶ 1, 4-18.   *En toto*, Shapiro pled guilty to violating 15 U.S.C. §§ 78j(b) (Manipulative and Deceptive Devices) and 78ff (Penalties for Willful Violations; False and Misleading Statements) and 17 C.F.R. § 240-10b-5 (Employment of Manipulative and Deceptive Devices).   *See* Plea Agreement.  Ultimately, Shapiro was sentenced to 20 years imprisonment.

On September 28, 2011, the Trustee commenced this adversary proceeding.   The Complaint, which is primarily directed at the Sheppard Parties, contains 59 separate counts in 120 pages.  The Complaint details approximately 38 alleged transactions or loans in support of the Trustee's numerous claims, which seek, *inter alia*, the avoidance and recovery of allegedly fraudulent transfers made by Capitol to the Sheppard Parties, as well as the other listed defendants.

4

The 59 counts in the Complaint assert various causes of actions that can be grouped as follows:

- Counts 1, 4, 6, 9, 12, 14, 17, 19, 22, 24, 27, 29, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, and 56 seek avoidance of transfers under theories of constructive and actual fraud;

- Counts 2, 5, 7, 10, 13, 15, 18, 20, 23, 25, 28, 30, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, and 57 seek recovery of transfers avoided;

- Counts 3, 8, 11, 16, 21, 26 and 31 assert state law usury claims and seek turnover of property of the estate pursuant to 11 U.S.C. § 542;

- Count 58 seeks damages for unjust enrichment; and

- Count 59 seeks to impose an equitable lien to prevent unjust enrichment.

## III.    LEGAL ARGUMENT

### A.  Standard for Motion to Dismiss

The standard for a motion to dismiss is oft cited and requires no general restatement here. Instead, the Sheppard Parties emphasize the following principles for purposes of this Motion.

*First*, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2010) (internal citations omitted) (emphasis added). In assessing whether a complaint states a plausible claim, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Similarly, "[]threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, "[w]here a complaint pleads facts that are

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

'merely consistent with' a defendant's liability," it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal citations omitted).

*Second*, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular . . . matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B *Wright & Miller* § 1357 (3d ed. 2004 and Supp. 2007)). "In determining whether to grant a Rule 12(b)(6) motion, the Court may also consider the allegations in the complaint, *matters of public record, orders, items appearing in the record of the case*, and exhibits attached to the complaint." *Hodges v. Buzzeo*, 193 F. Supp. 2d 1279, 1281 (M.D. Fla. 2002) (emphasis added); *see also Feltman v. Prudential Bache Sec.*, 122 B.R. 466, 474 (S.D. Fla. 1988) (taking judicial notice of filing by other parties in ruling on motion to dismiss). Here, the Sheppard Parties request that the Court take judicial notice of the plea agreement, indictment and filings referenced in this motion.

*Third*, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its *judicial experience and common sense*. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (internal citations omitted).

*Fourth*, a court is not constrained to accept as truth pleadings that make no sense, or that would render a claim incoherent, or that are contradicted by allegations in the complaint itself or by facts of which the court may take judicial notice, s*ee Hirsch v. Arthur Andersen & Co.*, 72

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice"); *Recreational Design & Const. Inc. v. Wiss, Janney, Elstner Associates, Inc.*, 2011 WL 5117163, *1 (S.D. Fla. Sept. 20, 2011) (conclusory statements coupled with inconsistent allegations resulted in dismissal of complaint for failing to state plausible claim), nor is a court required to rewrite a plaintiff's complaint to find a claim. *Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 912 (11th Cir. 1993).

**B.  The Trustee's usury claims must be dismissed**

The overriding theme of the Trustee's Complaint is the Florida usury statute, *F.S.A.* § 687.01 *et seq.*  The Trustee applies the usury statute in two different manners.

*First*, with respect to constructive fraud and turnover claims (Counts 1, 2, 6, 7, 9, 10, 14, 15, 19, 20, 24, 25, 29 and 30), the Trustee asserts that because the fraudulent promissory notes used to perpetuate the Debtors' fraud were unenforceable under the usury statute, all payments made to victims (including the Sheppard Parties) must be returned to the criminal Debtors because no reasonably equivalent value was given in exchange for the payments.  *Second*, the Trustee asserts direct claims under the usury statute (Counts 3, 8, 11, 16, 21, 26 and 31), alleging that payments made pursuant to the fraudulent promissory notes must be returned to the criminal Debtors.

7

1.        **The Florida Usury Statute**

Florida law establishes criminal penalties for willfully and knowingly extending credit at an effective rate of interest in excess of 25%. *Fla. Stat.* § 687.071. To establish such a claim, the following four elements must be found:

(1)    There must be a loan express or implied;

(2)    An understanding between the parties that the money lent shall be returned;

(3)    That for such a loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and

(4)    There must exist a *corrupt intent* to take more than the legal rate for the use of the money loaned.

*Dixon v. Sharp*, 276 So.2d 817, 819 (Fla. 1973) (emphasis added). In determining whether a loan is usurious, it is not dispositive that the lender receives more than the law allows; rather, the relevant inquiry is "the existence of a corrupt purpose in the lender's mind." *Id.* at 820. Elaborating further, the *Dixon* court noted that "[i]f a mere mathematical computation is determinative of intent then the words 'intent' and 'willfully and knowingly' have no force or effect and might just as well be deleted from the usury statute." *Id.* (citations omitted).

A party must allege with specificity the element of corrupt intent and prove as much by clear and satisfactory evidence. *Id.* at 821 ("That the lender willfully and with corrupt intent charged or accepted more than the prohibited interest must be specifically and affirmatively pleaded and established by clear and satisfactory evidence.") (citations omitted); *see also 2021 North Le Mans, LLC v. Fifth Third Bank*, 2010 WL 1837726, *1 (M.D. Fla. May 3, 2010) (dismissing usury claim where the complaint "lacks a factual allegation as to . . . the lender's

corrupt intent"); *In re Transcapital Financial Corporation*, 433 B.R. 900, 907 (Bankr. S.D. Fla. 2010) (usury must be proven by clear and convincing evidence, rather than the lower preponderance of the evidence standard) (citations omitted).

Finally, in determining whether a loan is usurious a court must look to the entire substance of the transaction. *Rollins v. Odom*, 519 So.2d 652, 657 (1st DCA 1988) (citations omitted) ("Since the purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender, for purposes of usury calculations, courts will look beyond the form of a transaction to its substance."); *see also In re Omni Capital Group, Ltd.*, 157 B.R. 712, 717 (Bankr. S.D. Fla. 1993) ("In determining whether a particular loan is usurious, the court must look beyond the terms of the documents themselves and consider the entire substance of the transaction."). Courts must undertake such a review because the purpose of the statute is to protect the needy borrower by penalizing the unconscionable money lender. *See Dixon*, 276 So.2d at 817 ("the very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans."); *Party Yards, Inc. v. Templeton*, 751 So.2d 121 (5th DCA 2000); *Jersey Palm-Gross v. Paper*, 639 So.2d 664 (4th DCA 1994).

## 2. The Trustee failed to plead that the Sheppard Parties acted with corrupt intent to violate F.S.A. § 687.01 *et seq.*

Although the Trustee makes many *sensational* allegations in his Complaint, noticeably absent is any *specific factual* allegation that asserts the Sheppard Parties, while being sucked into the Debtors' fraudulent scheme and losing over $1.2 million, acted with corrupt intent to charge a usurious rate. The Complaint is entirely devoid of any factual allegations regarding any meetings or conversations with the Debtors in which the Sheppard Parties strong-armed them

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

into paying an illegal rate.  Similarly, there are no factual allegations that at the time any particular promissory note was set to fund, the Sheppard Parties unilaterally imposed new and more onerous lending terms on the Debtors.  Instead, the Complaint only states, in repeated, unabashed and in conclusory fashion, that one or more of the Sheppard Parties "knowingly sought, charged and collected" interest at a violative rate.  *See, e.g.,* Complaint ¶¶ 151, 184.

The Trustee's failure to plead with specificity the Sheppard Parties' alleged corrupt intent to commit usury is fatal to his claims.[3]  Instead, the Trustee has only made "threadbare recitals of the elements" of a claim for usury.  *Iqbal*, 129 S.Ct. at 1949.  Such allegations are deficient under Florida law and *Iqbal's* pleading standard.  *See Dixon*, 276 So.2d at 821 (corrupt intent must be specifically plead); *2021 North Le Mans, LLC*, 2010 WL 1837726, at *1 (M.D. Fla. May 3, 2010) (dismissing usury claim for failure to plead corrupt intent with specificity); *Iqbal*, 129 S.Ct. at 1949.  Moreover, any argument that the allegations are "consistent with" the Sheppard Parties' purported violation of the statute  still "stop[s] short of the line between *possibility* and plausibility of 'entitlement to relief'" and thus, runs afoul of *Iqbal* and requires dismissal.  *Iqbal*, 129 S.Ct. at 1949.[4]

---

[3] Drilling down further, there is no factual allegation anywhere in the Complaint that Jennifer Sheppard acted with corrupt intent to violate the usury statute.  That said, the Trustee absurdly and in conclusory fashion takes the liberty to assert such a conspiracy.  *See, e.g.,* Complaint ¶ 274 ("The Sheppards knowingly conspired . . .  to charge and collect interest from Capitol at a criminally usurious rate").

[4] Nor can the Trustee argue that his claim is close enough to warrant ferreting out through the discovery stage.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 559  ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.").

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

Bigger picture, the Trustee could never allege with specificity a *plausible claim* that the Sheppard Parties acted with a corrupt intent to violate the usury statute because the Trustee's claims are entirely undercut and belied by (1) the multiple instances he identifies in which the Sheppard Parties lent *tens of millions of dollars to the Debtors without ever collecting a penny of purported interest*, and (2) the admitted, uncontested fact that the Debtors were engaged in a wholesale criminal fraud.

As to the first point, Paragraph 121 of the Complaint details 8 investments totaling millions of dollars in which no purported interest payments were made while paragraph 129 of the Complaint details 16 different investments totaling millions of dollars in which no purported interest payments were made.  Considering the Complaint in its entirety, *see Tellabs*, 551 U.S. at 322, and the entire substance of the transactions, *see Omni Capital*, 157 B.R. at 717; *Perkins*, 661 F.3d at 628 (in a *ponzi* scheme, substance of victims' investments controls), these allegations completely repudiate any notion, let alone a plausible claim, that the Sheppard Parties acted with corrupt intent to violate the usury statute.  *See Recreational Design & Const.*, 2011 WL 5117163, at *2 (S.D. Fla. Sept. 20, 2011) (conclusory statements coupled with inconsistent allegations do not state a plausible claim); *cf. Peacock v. Gen. Motors Acceptance Corp.*, 432 So. 2d 142, 146 (1st DCA1983) ("Contradictory allegations within a single count neutralize each other and render the count insufficient on its face."); *Harry Pepper & Associates, Inc. v. Lasseter*, 247 So.2d 736 (3d DCA 1971) (same).

As to second point, the practical reason why the Complaint is devoid of such allegations is because of the dynamics of a *ponzi* scheme – the criminal operator, far from being squeezed by his investors, instead lures them in with ever higher returns.  The indictment and plea agreement

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

make clear that Shapiro was peddling fraudulent investments that provided high rates of return to lure investors and that these investments were instruments of the fraud.  The Trustee has conceded as much in other filings in these cases.  *See* ECF No. 1, ¶ 20, Adv. Case No. 10-3301-LMI ("Investors were further *lured into investing with Capitol by being promised high interest rates on their investments*") (emphasis added).  But for purposes of his Complaint, the Trustee asks this Court to ignore all of this.  The Court, however, relying upon its "judicial experience and common sense," *Iqbal*, 129 S.Ct. at 1950, can conclude otherwise, and reject the Trustee's conclusory, implausible and inherently contradictory usury claims.

> 3.    **The Trustee's claims are barred because the promissory notes were violative of securities laws**

After significant Rule 2004 discovery of the Sheppard Parties, including voluminous document requests and several days of video-taped testimony, the Trustee is still unable to cogently and plausibly allege how the Sheppard Parties were predatory lenders.  What is undisputed and well documented though is that the Debtors were *predatory and criminal peddlers of fraudulent investments*:

(1)    Shapiro pled guilty to fraudulently inducing investors to provide Capitol millions of dollars when in fact Capitol had virtually no sales or profits;

(2)    Shapiro pled guilty to making false statements and representations to investors that their monies would be used to fund Capitol's grocery diversion business when in fact Shapiro intended to use such funds to repay earlier Capitol investors and for his own personal benefit;

(3)    Shapiro pled guilty, as part of his scheme to induce investors to invest in Capitol, to creating and showing potential investors fraudulent documents touting the

profitability of Capitol, including financial statements, tax returns and fake invoices for purchase and sale of goods; and

(4)    Shapiro pled guilty, as part of his scheme to induce investors to invest in Capitol, to *giving investors promissory notes that reflected alleged indebtedness of Capitol*.

*See generally* Plea Agreement, pp. 1, 2, 7; Indictment, ¶¶ 1, 4-18. The Trustee has repeatedly conceded as much in these cases. *See* Complaint, ¶¶ 133, 134; *see also* ECF No. 1778 ("Shapiro pled guilty to securities fraud and money laundering, admitting that between 2005 and 2009 Capitol had no legitimate business and that rather its sole business during that time period was a fraudulent Ponzi-like scheme, whereby Capitol secured a constantly increasing volume of new lender loans . . . to fund the principal and interest payments due on previously secured and then maturing lender loans"); ECF No. 1, ¶ 20, Adv. Case No. 10-3301-LMI ("Investors were further *lured into investing with Capitol by being promised high interest rates on their investments*") (emphasis added).

The Trustee cannot cleanse himself of the illegal acts of the criminal parties in whose shoes he now stands. As such, the claims fail.

This was the ruling of another bankruptcy court in a factually similar case. In *In re Bonham*, 229 B.R. 438 (Bankr. D. Alaska 1999), the debtor, in perpetrating a massive *ponzi* scheme, fraudulently induced victims to invest in the scheme by offering high rates of return. After the scheme collapsed, the trustee sued the victims of the scheme, asserting that their investments were usurious. The court rejected this overreaching claim. Instead, the court held that where a debtor violated securities laws as part of the *ponzi* scheme, the trustee was

subsequently barred from bringing usury claims against investors based on the illegal securities. While the court acknowledged that a trustee in bankruptcy may assert a right to a usury claim that belonged to a debtor, the court recognized that the trustee "stands in the shoes of the debtor" with respect to such a claim and takes such claim subject to all defenses that could be raised against the debtor outside of bankruptcy.  *Id.* at 442 (internal citations omitted).  Thus, if state law would have barred the debtor from bringing the usury suit, it likewise barred the trustee.  *Id.*

A similar result was reached in *Sender v. Simon (In re Hedged-Investments Associates, Inc.)*, 84 F.3d 1299 (10th Cir. 1996).  There, the court rejected the trustee's attempt to utilize the *ponzi* debtor's partnership agreement as a means to clawback transfers to *ponzi* investors under a theory of unlawful partnership distribution per the Colorado Uniform Limited Partnership Act. The court held that because the trustee stood in the shoes of the criminal *ponzi* operator, he could not then enforce an agreement that was fraudulently procured in furtherance of the *ponzi* scheme.

The Court may reach the same decision here.  Florida courts have long held that a contract that is violative of a valid statute is illegal and void.  *See Robert G. Lassiter & Co. v. Taylor*, 128 So. 14 (Fla. 1930); *Local No. 234, United Assoc. of Journeymen & Apprentices of Plumbing & Pipefitting Industry v. Henley & Beckwith, Inc.*, 66 So.2d 818 (Fla. 1953); *City of Miami v. Benson*, 63 So.2d 916, 923 (Fla. 1953); *Harris v. Gonzalez*, 789 So.2d 405 (4th DCA 2001).

It is uncontested that Shapiro, the sole officer and controlling shareholder of Capitol, admitted that he violated the securities laws in connection with the issuance of the promissory notes the Trustee now seeks relief upon.  As set forth above, it is *admitted* that these criminal promissory notes were artifices of perpetuating Capitol's fraud and that these artifices were part

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

of Shapiro's violation of numerous provisions of the securities laws.  The Trustee, standing in

the shoes of the Debtors, cannot now use these fraudulent instruments to claim usury against

investors.  *Cf. Bonham*, 229 B.R. at 438; *Sender*, 84 F.3d at 1299.

### 4. The Trustee's claims fail to establish that the Sheppard Parties' investments were at an illegal rate

The Complaint also fails to plausibly allege that the Sheppard Parties charged a rate in

excess of the legal rate in Florida.

As stated above, in the context of usury, a court must look to the entire substance of the

transaction and not its form.  *See Rollins*, 519 So.2d at 657.  This view comports with applicable

*ponzi* cases that have uniformly held that investments in the scheme are aggregated and netted

out to determine net winners and losers.  *See, e.g., Sender v. Buchanan (In re Hedged–*

*Investments, Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996).  Tantamount to the net investment

method is the commonsense holdings of multiple courts, including the Eleventh Circuit, that the

form of the investment in the *ponzi* scheme is to be disregarded and instead, the substance of the

investments control.  *See, e.g., Perkins*, 661 F.3d at 628.   Indeed, the Trustee has espoused the

very same view in this case, requesting that this Court allow him to utilize the net investment

method in calculating investor claims.  *See* ECF No. 1778.

Nevertheless, the Trustee disregards these bedrock principles and elevates form over

substance here, treating each *ponzi* investment made by the Sheppard Parties on a separate and

individual basis.  The reason the Trustee does so is clear – it enables him to manufacture claims

for usury with respect to several individual promissory notes all while conveniently ignoring

allegations that the Sheppard Parties never received any purported interest payments with respect

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

to tens of millions of dollars of other investments they made in Capitol.  *See* Complaint, ¶¶ 121, 129.

The Trustee asks this Court to ignore the reality alleged on the face of the Complaint that the Sheppard Parties are net losers, and instead, enforce a strained, rigid and formalistic view all so he can fabricate a cause of action.  That request, however, runs afoul of *Iqbal's* plausibility requirement, decades of case law relating to the aggregation of investments in *ponzi* schemes and Florida courts' directive that alleged usurious lending transactions be viewed in the entirety.  The Court, following this authority, along with its "*judicial experience and common sense*," should reject the Trustee's manufactured claims.  *Iqbal*, 129 S.Ct. at 1950.

### D.  Multiple counts asserting claims against the Sheppards must be dismissed

The Trustee, in flawed fashion, alleges that with respect to principal repayments made to WSG or the Related Sheppard Entities, the Sheppards were the persons for whose benefit these transfers were made and thus, he may recover from them personally pursuant to 11 U.S.C. § 550(a)(1) (Counts 9, 10, 14, 15, 19, 20, 24, 25, 29, 30, 35, 37, 39, 46, 47, 50, 51, 52, 53, 54, 55, 56 and 57).  The Trustee also attempts to assert similar dubious claims against the Sheppards with respect to his direct usury claims (Counts 11, 16, 21, 26, 31).  Regardless of how such claims are pled, they fail as a matter of law.

### 1.    The Trustee is attempting to work an end around on 11 U.S.C. § 550(a)(2)

Section 550(a)(1) of the Bankruptcy Code permits a trustee to recover a fraudulent transfer not only from the initial transferee, but also from "the entity for whose benefit such transfer was made."  11 U.S.C. § 550(a)(1).  However, "[s]omeone who receives the money later on is not an 'entity for whose benefit such transfer was made.'"  *Bonded Fin'l Services, Inc. v.*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

*European American Bank*, 838 F.2d 890, 896 (7th Cir. 1988).   Similarly, a subsequent transferee cannot be an entity for whose benefit the initial transfer was made, even if the subsequent transferee actually receives a benefit from the initial transfer.   *See Danning v. Miller (In re Bullion Reserve of North America)*, 922 F.2d 544, 548 (9th Cir. 1991); *Lippi v. City Bank*, 955 F.2d 599, 611 (9th Cir. 1992); *Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prod., Inc.)*, 892 F.2d 26, 28 (5th Cir. 1989); *Merrill v. Dietz (In re Universal Clearing House)*, 62 B.R. 118, 128 n. 12 (D. Utah 1986) ("A reading of subsection (a)(1) in conjunction with the remainder of section 550 leads to the conclusion that the phrase 'or the entity for whose benefit such transfer was made' refers to those who receive a benefit as a result of the initial transfer from the debtor – not as the result of a subsequent transfer."); *Bonded*, 838 F.2d at 895 ("[A] subsequent transferee cannot be the 'entity for whose benefit' the initial transfer was made.").

The "for whose benefit" language is inapplicable where the benefit is not the immediate and necessary consequence of the initial transfer, *i.e.*, the "benefit must derive directly from the [initial] transfer, not from the use to which it is put by the transferee." *Turner v. Phoenix Fin., LLC. (In re Imageset, Inc.)*, 299 B.R. 709, 718 (Bankr. D. Me. 2003).   In *In re International Management Assoc.*, the Eleventh Circuit held that even when an individual obtained complete control over the debtor's assets through a voidable transfer, it still does not give rise to the sort of "benefit" contemplated by § 550(a)(1).   399 F.3d 1288, 1292 (11th Cir. 2005).   Instead, the classic paradigm of a person who receives a benefit from the initial transfer is a contractual guarantor because the guarantor benefits from the initial transfer, as the transfer reduces the obligation on the guaranty.   *See Bonded*, 838 F.2d at 895; *see also In re Coggin,* 30 F.3d 1443, 1453 (11th Cir. 1994) (for whose benefit language is typically applied to the contractual

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

guarantor context); *In re Finley, Kumble, et al.,* 130 F.3d 52, 57 (2d Cir. 1997) (same); *see also* 5 Collier on Bankruptcy ¶ 550.02[4] at 550-17 (15th ed.1984).

The principal of a corporation that receives a transfer is not the person "for whose benefit" the transfer was made even if he or she has complete control of the corporation. *Schechter v. 5841 Building Corp.* (*In re Hansen*), 341 B.R. 638, 644 (Bankr. N.D. Ill. 2006) (president and majority shareholder of two companies that received transfers from the debtor was not the person for whose benefit the transfer was made; summary judgment granted); *see also Peterson v. Hofmann* (*In re Delta Phones, Inc.*), 2005 WL 3542667 (Bankr. N.D. Ill. 2005) (principals of company not persons for whose benefit transfer was made); *Turner*, 299 B.R. at 718 (members' interests in LLC insufficient to render them liable under § 550(a)(1) as beneficiaries of the transfers to the LLC). A principal does not receive the benefit of a transfer to a corporation any more than he or she received the transfer itself. *See Peterson*, 2005 WL 3542667, at *5.

This rule of law is based on one of the most important tenets of the law of corporations, the "entity theory," which provides that a corporation is a separate entity, distinct from its corporate and non-corporate shareholders. *Stamp v. Inamed Corp.*, 777 F.Supp 623 (N.D. Ill. 1991); *see also Evergreen*, 319 B.R. at 255 ("The Supreme Court of Florida has held a corporation is a well recognized legal entity which may conduct business in its own right as distinguished from the credit and assets of its stockholders"). Indeed, if the corporate form were ignored and a principal or shareholder was considered the entity for whose benefit a transfer to a corporation was made, a principal or shareholder would be strictly liable every time a corporation received a fraudulent conveyance. *See Turner,* 299 B.R. at 709. This is clearly not

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

the purpose of § 550(a)(1), for if it was, it would render the language "the entity for whose benefit such transfer was made" superfluous.

Here, the Trustee completely ignores this principle and attempts to concoct individual liability on the part of the Sheppards.  In numerous instances, the Trustee claims that one or more of the Sheppards were the persons for whose benefit principal repayment transfers were made, presumably because of Eric Sheppard's partial ownership interest in WSG Devco or the Related Sheppard Entities.  For a limited number of investments, the Trustee attempts to cure his deficient application of § 550(a)(1) by further alleging that Eric Sheppard was the person for whose benefit certain transfers were made because if Capitol did not repay the particular Related Sheppard Entity, then Eric Sheppard would have been required to repay such entity.  *See, e.g.,* Complaint, ¶¶ 365, 378.

As the above case law makes clear, though, such allegations fail as a matter of law.  *First*, any attempt to superimpose § 550(a)(1) liability upon the Sheppards by virtue of Eric Sheppard's partial ownership interest in WSG Devco or the Related Sheppard Entities is without legal basis and must be dismissed.  *See Turner*, 299 B.R. at 718.  *Second*, any attempt to create such liability by alleging that Eric Sheppard would have been required to repay monies to one or more of the Related Sheppard Entities if Capitol did not repay the obligation similarly fails.  The guarantor scenario envisioned under § 550(a)(1), *see Bonded*, 838 F.2d at 895, does not comport with the Trustee's allegations by virtue of the fact that the Eric Sheppard was not a *contractual guarantor of Capitol* nor could the Trustee ever allege as much.  Instead, the Trustee's allegations on this point merely track the logic of his flawed allegations that Eric Sheppard was the person for

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

whose benefit the transfers were made by virtue of his ownership interest in the pertinent entity. As such, counts seeking relief against the Sheppards under this theory must be dismissed.

### 2. The Trustee cannot attempt to impose usury liability upon the Sheppards based on principal payments made to WSG Devco or one of the Related Sheppard Entities

Perhaps realizing the inherent flaw in his attempt to utilize § 550(a)(1) to sue the Sheppards personally, the Trustee attempts to recover the same principal payments from them under a direct usury theory. The Trustee's theory is that the Sheppards conspired with WSG Devco or one of the Related Sheppard Entities to violate the usury statute. *See, e.g.,* Complaint, ¶ 205 ("The Sheppards, knowingly conspired with [other Related Sheppard Entities] to charge and collect interest from Capitol . . . at a criminally usurious rate").

These direct usury claims against the Sheppards should fail for the reasons already argued above. That aside, there are also no allegations, specific or otherwise, that establish any elements of a supposed conspiracy between the Sheppards and the entities. Instead, the Court and Sheppards are only left with the Trustee's conclusory statements that an alleged conspiracy occurred at some unknown time and place that then resulted in an effort by all the Sheppard Parties to charge a usurious rate on several loans all while other loans collected no interest.

This failure to plead with any specificity should result in the dismissal of the claim as to the Sheppards. *See Buckner v. Lower Florida Keys Hospital District*, 403 So.2d 1025 (3rd DCA 1981) (civil conspiracy requires: (i) an agreement between two or more parties; (ii) to do an unlawful act; (iii) the doing of some overt act or to do a lawful act by unlawful means; (iii) the doing of some overt act in pursuance of the conspiracy; and (iv) damage to the plaintiff as a result of the acts done under the conspiracy). Simply, the Trustee has failed to allege sufficient

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

facts to support any of his allegations regarding a conspiracy among the Sheppard Parties. The Complaint only casts broad aspersions that the Sheppard parties acted in concert with the entities to charge criminally usurious rates.  *See* Complaint, ¶¶ 205, 239, 274, 307.  However, there are no sufficient facts to support these scandalous allegations and they should therefore be disregarded.  *See Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, (11th Cir. 2009) (vague and conclusory allegations of a conspiracy were insufficient to state plausible claim).  But regardless, even if the Trustee could sufficiently allege such a fantastic conspiracy, he still cannot point to a single Florida case that recognizes his newly created cause of action of *conspiracy to commit usury*.[5]

The Court, however, can dismiss these claims against the Sheppards for a more fundamental reason – they are blatantly contradicted by the Trustee's other allegations in the Complaint.  In numerous instances the Trustee alleges that with respect to purported interest payments made by Capitol to the Sheppards (either directly or indirectly), such payments were made without receiving reasonably equivalent value from the Sheppards because they did not personally make the loan to Capitol.  *See* Complaint, ¶ 80 ("Since the loan was made by WSG, Capitol received no reasonably equivalent value for making the interest payments to CC Bank and Rutledge for the benefit of the Sheppards."); ¶ 93 ("Since the loan was made by the Development Projects, Capitol received no reasonably equivalent value for making the $150,000 Deco Payment on behalf of the Sheppards."); ¶ 101 ("Since the loan was made by the

---

[5] Undersigned counsel was able to identify one unreported decision in which the cause of action was referenced.  *In re Tidewater Lodging Group, LLC*, 2009 WL 909417, *1 (Bankr. S.D. Fla. Apr. 3, 2009).  That decision, however, expressed no opinion as to whether the cause of action was recognized in Florida.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

Development Projects, Capitol received no reasonably equivalent value for making the interest payments to the Sheppards."); ¶ 108 ("Since the loan was made by the Development Projects, Capitol received no reasonably equivalent value for making the interest payment to Deco on behalf of the Sheppards."); ¶ 115 ("Since the loan was made by WSG, Capitol received no reasonably equivalent value for making the interest payments on the September 2007 Loan  to Deco for the benefit of the Sheppards."); ¶ 119 ("As the $10 Million Interest-Free loans were made by WSG and the Development Projects, Capitol did not receive any reasonably equivalent value for making the $17,257.52 Deco Payment on the Sheppards' behalf.").[6]

Accepting these allegations as true, it is entirely absurd for the Trustee to then argue the exact opposite with respect to purported *principal payments* on these very same loans.  The Trustee is talking out of both sides of his mouth, expressly asserting that the Sheppards must be considered lenders for purposes of usury liability as to principal repayments, but not lenders as to these same exact counts for purposes of interest payments made to them.  Framed as such, the claim is implausible, contradictory on its face and warrants dismissal.  *See Peacock*, 432 So.2d at 146 ("Contradictory allegations within a single count neutralize each other and render the count insufficient on its face.").

### E.  Claims relating to transfers made by Ocean Rock must be dismissed because the Trustee has no standing to assert claims on behalf of a non-debtor entity

Counts 36 and 37 of the Complaint seek to avoid and recover transfers made by Capitol and Ocean Rock Enterprises, Inc. ("***Ocean Rock***") to several of the Sheppard Parties under a

---

[6] The allegations are incorporated by reference in the Trustee's direct usury claims against the Sheppards. *See, e.g.,* Complaint, Count 16 (incorporating by reference ¶ 101 of the Complaint). Thus, the Trustee cannot argue that he made such allegations in an attempt to plead a cause of action in the alternative.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

theory of actual fraud.  At a minimum, the Trustee should be required to provide a more definite statement as to which entity made the transfer that the Trustee now seeks to avoid.  Importantly, to the extent that Ocean Rock was the entity that made the payment now sought to be avoided, the claims must be dismissed because the Trustee is asserting claims on behalf of a non-Debtor entity.

Presumably, the Trustee's response will be (as alleged in the Complaint), that because Ocean Rock is now substantively consolidated with Capitol, allegations relating to Capitol's fraudulent operations equally apply to Ocean Rock.  That position assumes that this Court's *pure default judgment* that ordered substantive consolidation of Ocean Rock with Capitol is binding on the Sheppard Parties, a non-party to the lawsuit, Adv. Case No. 10-03131-LMI.  The law is clear though, that the judgment is not binding and thus, is not entitled to preclusive effect for purposes of this proceeding.

*First*, the Trustee cannot invoke the doctrine of collateral estoppel as to the judgment. Putting aside the other elements of collateral estoppel,[7] the federal rule of law is clear that a pure default judgment will never satisfy the "actually litigated" prong of the doctrine.  *In re Bush*, 62 F.3d 1319, 1323 (11th Cir. 1995) ("The general federal rule, however, is to the contrary. Ordinarily a default judgment will not support the application of collateral estoppel because '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.'") (internal citations omitted).  As such, the doctrine is inapplicable.

---

[7] To successfully claim collateral estoppel, the party relying on the doctrine must show that: (1) the issue at stake is the same as the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.  *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

*Second*, the Trustee cannot invoke the doctrine of res judicata on the basis that there is no privity between the Sheppard Parties and Ocean Rock.[8]   "This Circuit's preclusion standards reflect the longstanding and deep-rooted principle of American law that a party cannot be bound by a judgment in a prior suit in which it was neither a party nor in privity with a party."   *Pemco Aeroplex*, 383 F.3d at 1285 (internal citations omitted).   "Privity" describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty.   *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986) (internal citations omitted).   "This relationship between the party and nonparty may be one of several types: where the nonparty has succeeded to the party's interest in property, where the nonparty controlled the original suit, where the nonparty's interests were represented adequately by the party in the original suit . . . and where the party and nonparty have concurrent interests in the same property right."   *Id.*   Applying these examples here, the Trustee cannot credibly argue that the Sheppard Parties share privity with Ocean Rock, *the entity now suing them*.   Because there is no privity, the doctrine of res judicata is inapplicable.

### E.   The Trustee's unjust enrichment and equitable lien claims must be dismissed

In Counts 58 and 59 of the Complaint, the Trustee seeks damages and an equitable lien under the equitable doctrine of unjust enrichment.   These claims, however, must be dismissed on

---

[8] "Res judicata can be applied only if all of four factors are shown: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata or collateral estoppel applies."   *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285-86 (11th Cir. 2004) (internal citations omitted).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

the basis that the Trustee has no standing to assert them and they are barred by the doctrine of *in pari delicto.*

A Trustee has no standing to bring non-fraudulent transfer claims against a third party on behalf of a debtor that operated as an engine of theft. *See Feltman v. Prudential Bache Sec.*, 122 B.R. 466, 473-74 (S.D. Fla. 1990). Namely, any purported injury to the debtor is illusory by virtue of the fact that the monies sought to be recovered were stolen in the first instance by the debtor from its investors. *See id.* ("All corporations are legal fictions. In this case, however, FIP and FFP were simply fictitious. The complaint alleges that FIP and FFP were sham corporations, alter egos with no corporate identity separate from Henry Gherman. As the corporations were essentially only conduits for stolen money, any injury to the debtors in this case must be substantially coterminous with the injury to the defrauded creditors. Everything Gherman stole from the debtor corporations, the debtors had stolen from the creditors. Thus, any alleged injury to the debtors is as illusory as was their corporate identity."); *see also S.I.P.C. v. Capital City Bank (In re Meridian Asset Mgmt., Inc.)*, 296 B.R. 243, 250-51 (Bankr. N.D. Fla. 2003) (S.I.P.C., in its capacity as trustee, lacked standing to bring claims on behalf of entity that was admittedly engaged in wholesale fraud).

Here, it is uncontested that Shapiro operated Capitol as an engine of theft, stealing millions of dollars from investors to fund his lavish lifestyle and repay Capitol's earlier investors. It is also uncontested that Capitol had no legitimate business operations during the time period the Trustee asserts claims against the Sheppard Parties. As such, the Trustee, on behalf of Capitol, cannot assert equitable claims against the Sheppard Parties because the

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

purported damages suffered by Capitol are illusory – the monies it transferred to the Sheppard Parties were admittedly stolen from others.

Along similar lines, the Trustee's equitable claims must also be dismissed per the *in pari delicto* doctrine. That doctrine provides that where a plaintiff bears equal responsibility for the wrongdoing sought to be redressed, he may not recover damages arising from such wrongdoing. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). With respect to corporations, *in pari delicto* will apply where a corporation is "wholly dominated by persons engaged in wrongdoing," and the corporation has itself become the instrument of wrongdoing. *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So.2d 1039, 1045 (2d DCA 2007) (internal citations omitted).

The doctrine applies to the Trustee, who stands in the shoes of the Debtors and is "subject to any equitable or legal defenses that could have been raised against the debtor." *See Grassmueck v. The American Shorthorn Assn.*, 402 F.3d 833, 836 (8th Cir. 2005) (holding that the *in pari delicto* doctrine barred an action by a trustee against defendants who facilitated the debtor's fraudulent investments when the debtor knew the investments were fraudulent). A court may dismiss a claim based on *in pari delicto* at the motion to dismiss stage if the defense is clear on the face of the complaint. *See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) (affirming trial court's dismissal of trustee's RICO complaint under the *in pari delicto* doctrine); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001); *Terlecky v. Hurd (In re Dublin Sec.)*, 133 F.3d 377 (6th Cir. 1997).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

Here, all of the elements of *in pari delicto* are clear on the face of the Complaint and thus, the Trustee's equitable claims must be dismissed. The Complaint alleges that Capitol had no legitimate business and operated only as a fraudulent *ponzi* scheme. Complaint, ¶¶ 39-41. As it is not disputed that Capitol was controlled and dominated by Shapiro to perpetrate his fraud, *see* Complaint, ¶¶ 39-41, no adverse interest exception applies and the claims fail as a matter of law.

**F. The Trustee's subsequent transferee claims turnover claims must be dismissed**

Counts 5, 13, 18, 23, 28, and 33 of the Complaint seek to impose subsequent transferee liability against the Sheppards pursuant to F.S.A. § 726.109(2)(b) for payments made to Rutledge Apartment, LC, Deco Contractors, Inc. and Capital One Bank, NA. On their face, the allegations asserted by the Trustee within the counts themselves indisputably negate any theory of subsequent transferee liability against the Sheppards – the Trustee has also alleged that the Sheppards were the beneficiaries of these same transfers. As set forth above, the statutory framework makes clear that a party can only be a beneficiary of a transfer or a subsequent transferee, but never both. Thus, these claims must be dismissed.

Similarly, the Trustee's § 542 claims found in Counts 3, 8, 11, 16, 21, 26 and 31 must be dismissed because that section only applies to tangible property and money due to a debtor *without dispute* that is fully matured and payable on demand. *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990); *In re Palm Beach Heights Dev. & Sales Corp.*, 52 B.R. 181, 183 (Bankr. S.D. Fla. 1985) ("[t]here is no doubt that Congress enacting § 542 contemplated a turnover to the estate of properties and monies which were due to the estate *without dispute* which are fully matured and payable on demand.") (emphasis added); *In re Ven-Mar Int'l, Inc.*, 166 B.R. 191, 192-93 (Bankr. S.D. Fla. 1994) (dismissing turnover claim where "the [c]omplaint clearly

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

indicates that there is dispute between the parties over whether any monies are due and owing"). Not surprisingly here, Defendants dispute all of the Trustee's claims. Accordingly, such relief fails as a matter of law and must be dismissed. *See Giuliano v. Fairfield Grp. Health Care Ctrs. L.P. (In re Lexington Healthcare Grp., Inc.)*, 363 B.R. 713, 716 (Bankr. D. Del. 2007) (granting motion to dismiss and stating "[w]here there is a legitimate dispute about the ownership of property a trustee seeks to recover, turnover under section 542 is not appropriate.").

### G. The plea agreement, indictment and Complaint affirmatively demonstrate the Sheppard Parties' good faith and thus, the Trustee's actual fraud claims must be dismissed

In Counts 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56 and 57 the Trustee seeks to avoid and recover transfers made to the Sheppard that were made with the intent to delay, hinder or defraud creditors of Capitol. These counts are, in large part, pled in the alternative to the Trustee's constructive fraud and usury claims discussed above. Based on the plea agreement, indictment and the allegations contained in the Complaint, all of these claims must be dismissed.

The Eleventh Circuit's *Perkins* decision restated what has long been "the general rule" that "a defrauded investor gives 'value' to the Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal." *See* 661 F.3d at 627 (11th Cir. 2011) (internal citations omitted). "Courts have recognized that defrauded investors have a claim for fraud against the debtor arising as of the time of the initial investment. Thus, any transfer up to the amount of the principal investment satisfies the investors' fraud claim (an antecedent debt) and is made for "value" in the form of the investor's surrender of his

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

or her tort claim. Such payments are not subject to recovery by the debtor's trustee." *Id.* (internal citations omitted).

Here, by virtue of plea agreement, indictment and Complaint, the Sheppard Parties are admittedly victims of the Debtors' criminal actions. The plea agreement is unequivocally clear on this point – Shapiro did not plead guilty to defrauding some of his investors part of the time and others all of the time. Instead, *he pled guilty to defrauding everyone, all of the time*. *See generally* Plea Agreement, pp. 1, 2, 7; Indictment, ¶¶ 1, 4-18. Shapiro admitted to making false statements regarding Capitol's operations and performance, providing phony documents to investors, and preparing and providing fraudulent investment documents to investors. Shapiro even continued his fraud in this Court, refusing to provide documents to the Trustee during the gap period and inappropriately asserting his Fifth Amendment privilege. Only until he was indicted and pled guilty did the extent of Shapiro's machinations become clear. The Trustee has admitted as much in the Complaint, *see* Complaint, ¶¶ 39, 40, 41, 42, 43, 130, 131, 132, 133, 134, and other filings in these cases, *see, e.g.,* ECF No. 1, ¶¶ 24-25, Adv. Case No. 10-3301-LMI ("In order to conceal its fraud . . . Capitol's Federal Income Tax Returns . . . were filed on a cash basis. To further conceal its fraud, Capitol would create . . . false (a) invoices . . . (b) purchase orders . . . and (c) bills of lading.").

The relevant documents the Court may take judicial notice of make clear that the Sheppard Parties were victims of the fraud. Furthermore, the Trustee admits in the Complaint that the Sheppard Parties were not profiteers of the fraud.[9] *See* Exhibit 1. As such, the "general

---

[9] At best, the Trustee could only argue that WSG Devco was a profiteer for the sum of $2,000.

rule" applies and the actual fraud claims must be dismissed.  Simply, there are no fictitious profits for the Trustee to clawback from the Sheppard Parties.

## H. Allegations relating to the Sheppard Parties must be stricken

In specious fashion, the Trustee alleges that certain transfers allegedly made on behalf of the Sheppards knowingly went unreported to taxing authorities.  These allegations are improper in purpose and lacking in evidentiary support and must be stricken.

*Fed. R. Civ. P.* 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Immaterial allegations are those that either bear no essential or important relationship to the pleader's claim for relief or contain a statement of unnecessary particulars, *see Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (striking complaint's reference to "Slave Sweatshop"), while impertinent matter is an allegation that does not pertain to, or is unnecessary to, the issues in dispute.  *See Whittlestone*, 618 F.3d at 974.  Scandalous matter, on the other hand, is that matter which casts a person or entity in a derogatory light.  *See Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613 (1st Cir. 1988) (striking as "scandalous" references that impugned the character of the defendant); *Righthaven LLC v. Democratic Underground, LLC*, 791 F. Supp. 2d 968, 977 (D. Nev. 2011) (casts person in "cruelly derogatory light"); *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 645 (N.D. Tex. 2007) ("unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court"); *Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 481 (S.D.N.Y.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

2003) (it "amounts to nothing more than name calling, and does not contribute to [the] substantive claims").

The Trustee cannot credibly articulate why he made these recklessly false allegations. They certainly have no bearing on proving the statutory elements of a constructive fraud claim (such as insolvency or reasonably equivalent value) or an actual fraud claim (where the scienter of the debtor is at issue). Nor do the allegations prove up a usury claim since corrupt intent to violate the usury statute is what is relevant; not an alleged failure to pay taxing authorities.

At a minimum then, these false allegations are immaterial to the Trustee's claims. Viewed more cynically, they are only included to impugn the character of the Sheppard Parties before this Court and taint the proceedings going forward. Either way, they must be stricken from the Complaint.

## IV.    CONCLUSION

The bankruptcy courts' equitable powers "have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton*, 308 U.S. 295, 304-305 (1939). Here, the Trustee is attempting to effectuate a significant eight-figure windfall to the bankruptcy estate, notwithstanding the indisputable fact that the Sheppard Parties never profited from the fraud and, instead, the Debtors benefited from their crimes.[10] Based on these considerations,

---

[10] Moreover, even if the Trustee could claim any type of damage to the bankruptcy estate, the Trustee's attempt to collect an eight-figure windfall from the Sheppard Parties is entirely inequitable. *See Bakst v. Wetzel*, 518 F.3d 874 (11th Cir. 2008) (affirming Judge Hyman's ruling that defendant who received avoidable fraudulent transfer was entitled to equitable adjustment on the basis that funds from the transfer were subsequently used for the bankruptcy estate's benefit).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

along with applicable authority and the admitted facts of these cases, the Complaint should have never been filed.

WHEREFORE, the Sheppard Parties respectfully request that this Court enter an Order

(1)     Dismissing Counts 1, 2, 3, 6, 7, 8, 9, 10, 11, 14, 15, 16, 19, 20, 21, 24, 25, 26 29, 30 and 31 of the Complaint;

(2)     With respect to Counts 9, 10, 11, 14, 15, 16, 19, 20, 21, 24, 25, 26, 29, 30, 31, 35, 37, 39, 46, 47, 50, 51, 52, 53, 54, 55, 56 and 57, dismiss any claims against the Sheppards personally for any principal repayments made to WSG Devco or any of the Related Sheppard Entities;

(3)     Dismiss Counts 36 and 37;

(4)     Dismiss Counts 58 and 59;

(5)     Strike all allegations contained in the Complaint that reference any failure by the Sheppards to report transfers from the Debtors to taxing authorities; and

(6)     Grant such further relief this Court deems just and proper.

Dated: December 15, 2011

           s/ Peter D. Russin
          Peter D. Russin, Esquire
          Florida Bar No. 765902
          prussin@melandrussin.com
          MELAND RUSSIN & BUDWICK, P.A.
          3000 Southeast Financial Center
          200 South Biscayne Boulevard
          Miami, Florida  33131
          Telephone: (305) 358-6363
          Telecopy: (305) 358-1221

          *Attorneys for Defendants*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the

Court's Notice of Electronic Filing on December 15, 2011 on those parties listed on the attached

Exhibit 1 and via Regular U.S. Mail upon the parties listed on the attached Exhibit 2.

 s/ Peter D. Russin
Peter D. Russin, Esquire

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5404/5404-1/01001012.DOCX.}

## <u>SERVICE LIST</u>

**Electronic Mail Notice List**
The following is the list of parties who are currently on the list to receive e-mail notice/service
for this case and who therefore will be served via the Court's Notice of Electronic Filing:

Gary M Freedman    gfreedman@tabasfreedman.com,
jackie@tabasfreedman.com;lise@tabasfreedman.com
Thomas R. Lehman    trl@lkllaw.com, jmh@lkllaw.com;esf@lkllaw.com;cag@lkllaw.com
Matthew A Mannering    mmannering@hunton.com, dparry@hunton.com
Raymond V Miller    rmiller@gunster.com, vyon@gunster.com
Andrea L Rigali    arigali@tabasfreedman.com,
Jcepero@tabasfreedman.com;mcampbell@tabasfreedman.com

**EXHIBIT 1**

Deco Contractors, Inc.
1160 Kane Concourse, Ste. 201
Bay Harbor, FL 33154

Rutledge Apartments, L.C.
6959 Arapaho Road, Ste. 122
Dallas, TX 75248

Capital One Bank, N.A. f/k/a
Chevy Chase Bank
4851 Cox Road
Glen Allen, VA 23060

Thomas R. Lehman, Esq.
Levine Kellogg, et. al.
201 S. Biscayne Blvd., 34th
Miami FL 33131

**EXHIBIT 2**